## Hieskell's Estate.

*Trusts and trustees—Deed of trust—Transfer inheritance tax—Acts of May 6, 1887, June 20, 1919, and May 4, 1921.*

1. Where a deed of trust was executed before the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, became effective, by which the settlor reserved a life estate to himself for life, and upon his death to the use of his children and descendants, and if he should die without leaving descendants, to such persons as would have been entitled thereto under the intestate laws of Pennsylvania if he had died "intestate, unmarried and without issue," and the settlor died in 1922 intestate, unmarried and without issue, the estate, on passing to his sister as his only heir-at-law and next of kin, is taxable at the rate of 5 per cent., under the Act of May 6, 1887, P. L. 79, and not at a rate of 10 per cent., under the Act of June 20, 1919, P. L. 521, as amended by the Act of May 4, 1921, P. L. 341.

2. In such case, it is immaterial that the settlor retained a power to appoint by will a portion of the estate to his widow, or that the trustees were authorized to restore the property to him when they deemed him of sufficient discretion to control it, or that he directed that the estate should not be liable for his debts or "liable to be anticipated" by him "by any act which shall become operative in his lifetime."

3. A gift by deed to one who would have taken if the settlor had died intestate is a gift by and because of the deed, and not under the intestate law.

Exceptions to adjudication of hearing judge *sur* appeal from Register of Wills. O. C. Phila. Co., July T., 1922, No. 651.

LAMORELLE, P. J., filed the following adjudication:

This matter came before me, Lamorelle, P. J., upon petition, answer and replication. On Sept. 21, 1923, a hearing was had, when Otto Wolff, Jr., Esq., and Francis C. Adler, Esq., appeared for the petitioners, and William M. Boenning, Esq., appeared for the Commonwealth.

Those facts which are material follow:

By deed dated Nov. 6, 1872, Colson Hieskell, Jr., conveyed all his property, real and personal, unto Nathan Myers and John B. Myers, in trust, to keep the same invested on interest and to collect the income thereof and either to pay the net residue of such income unto Colson Hieskell, Jr., or to apply and disburse the same for his maintenance and support during his life; and in

4 D. & C.

trust, upon his death, for the use and benefit of his children and descendants, and, in event that he should die without leaving descendants, "then and in such case In Trust for such person and persons and for such Estates and interests as would be entitled to the same under the intestate laws of Pennsylvania if the said Colson Hieskell had died seized and possessed of said Trust Estate intestate, unmarried and without issue. . . ."

There was a provision in the deed by which the settlor could appoint by will one-third of the income for the benefit of his widow for life. He died unmarried.

There was a further provision that whenever in the judgment of the trustees the settlor should be deemed and considered of sufficient prudence, discretion and ability to manage and control himself and his affairs in a suitable and businesslike manner, they could restore the property to him free and clear of the trust, conditioned, however, on the acquiescence of his mother. The trustees never exercised this power.

While there was no right of revocation in terms in the deed, it would appear that a power of disposition effective after death did exist; for, after providing that the income should be paid to or used for the settlor for life, the following clause appears: "that neither the said income nor the capital or principal of the said trust estate shall be liable to or bound by the debts, contracts or engagements of the said Colson Hieskell, Junior, nor liable to be anticipated, attached, assigned or disposed of by the said Colson Hieskell, Junior, by any act which shall become operative in his lifetime. . . ."

The settlor executed no such instrument, so far as the record shows.

Colson Hieskell, Jr., died May 12, 1922, intestate, unmarried and without issue. His mother predeceased him.

The Commonwealth has assessed transfer inheritance taxes at 10 per cent. under the Act of June 20, 1919, P. L. 521, as amended by the Act of May 4, 1921, P. L. 341. A sister of the settlor, Mary H. Maule, heir-at-law and next of kin, along with the substituted trustee, The Commonwealth Title Insurance and Trust Company, have appealed.

The property held by the substituted trustee is that conveyed by the deed of 1872, except as changed by sales and reinvestments.

The Commonwealth's contention is ingenious. It is in effect that the settlor has provided in his deed that, in event he dies without wife or descendant him surviving, he is to be treated as dying intestate; that the one who takes, takes as of the date of his death; that nothing passes to her until that time; that the right of as well as the actual enjoyment are one and the same thing, and that, therefore, taxes are to be assessed under the law which is at that time in effect. This proposition is sound if there is an intestacy or the equivalent of one, and the conclusion logically follows. But there is no intestacy in fact. A gift to one who would take if the settlor died intestate is, after all, a gift by and because of the deed. The deed designated the method of determining the beneficiary, and at the time of the execution of the deed in 1872, the title which passed then from the settlor passed to the one or more answering the description of next of kin and heir-at-law, subject only to its being divested in case the settlor left surviving descendants or by writing effective after his death disposed of the principal. Had the settlor made no provision other than for his wife or children and issue, or had he in terms elected to die intestate, then and in such cases the argument of the Commonwealth should prevail.

Except as to the phase of the question discussed by Mr. Boenning in his brief on behalf of the Commonwealth, and as to which Frisbie's Estate, 266

Hieskell's Estate.

Pa. 574, leans towards the views expressed by me, and which I deem controlling, I am unable to distinguish the instant case from our decisions in Houston's Estate, 2 D. & C. 334, 276 Pa. 330, and in Dolan's Estate, 3 D. & C. 264, and I am, therefore, of opinion that the Commonwealth erred in assessing tax at 10 per cent. under the acts above recited, and that, on the contrary, it should have assessed tax at 5 per cent. under the Act of May 6, 1887, P. L. 79 (see Jewell's Estate, 20 Dist. R. 1055), and I enter the following decree:

And now, to wit, Oct. 29, 1923, the appeal is sustained and the record is remitted to the Register for proper action in accordance with this opinion.

*William M. Boenning*, for Commonwealth, exceptant.

*Lewis, Adler & Laws*, contra.

HENDERSON, J., March 14, 1924.—After a careful study of the able briefs submitted by counsel for the Commonwealth, we are of opinion that the hearing judge correctly disposed of the questions involved, and for the reasons therein given, and, hence, the exceptions are dismissed and the decree therein entered is confirmed absolutely. See Dolan's Estate, 279 Pa. 582.