# Kelso *against* Dickey.

A testatrix bequeathed a legacy to her daughter under the following contingency :—"And in case she lives unmarried to the age of twenty-five years, then the whole amount, principal and interest, to be paid to her; or the whole amount to be paid to her on the birth of issue. But in case she dies before the age of twenty-five, or without issue born, then to be divided equally between my sister H. and brothers W. and G." The daughter married and died without issue after the age of twenty-one, and before she arrived at twenty-five : *Held*, That the limitation over to the sister and two brothers was not too remote, but took effect : the word "*or*" being construed *and*, the contingency must happen within a life or lives in being, and twenty-one years afterwards ; and it is therefore good by way of executory devise. *Held* also, that such legacy was so vested in the sister and brothers of the testatrix, as to be transmissible to their personal representatives in the event of their death before the daughter of the testatrix.

ERROR to the Common Pleas of *Franklin* county.

Charles W. Kelso, executor of Elizabeth Speer Kelso, against James Dickey. This was an action of debt for a legacy, in which the parties agreed to the following facts in the nature of a special verdict :—

" Sarah B. Huston, of Franklin county, by her will duly proved and registered in said county, dated 26th January 1825, devised, &c. (prout will).

James Dickey and Charles Gillespie, trustees under said will, agreeably to the provisions of said will, sold the real estate of said

[Kelso v. Dickey.]

testatrix and conveyed the same by deed dated the 1st day of April 1827, to Miller, Martin and others, for the sum of $2604.70, which purchase money, with the interest thereon, is in the hands of the said James Dickey.

Elizabeth Speer Huston, the daughter and devisee of Mrs Sarah B. Huston, was married to Charles W. Kelso, Esq., the plaintiff, in 1842.

The said Elizabeth Speer Kelso, by her will, bearing date 7th August 1842, duly proved and registered in the proper office of the county of Erie, Pennsylvania, devised her estate, &c., and of which letters testamentary were issued to the said Charles as executor, (prout will and probate).

The said Elizabeth died on the 24th April 1843, without issue, aged 23 years 8 months and 19 days, being born on the 5th August 1819.

That Harriet Buchanan, William S. Buchanan and George W. Buchanan, sister and brothers of said Sarah, died after said Sarah and some years before the death of said Elizabeth, said William and George without issue and unmarried. The said Harriet left issue a son, James B. Henry, born 1st March 1833, of whom the Hon. James Buchanan is guardian.

The Hon. James Buchanan, Rev. Edward Y. Buchanan and Mrs Maria T. Yates, married to Dr Charles M. Yates, are the only surviving brothers and sister of said Sarah. Jane, a sister of said Sarah, married to Elliott T. Lane, died before the death of said Elizabeth, and since the deaths of said William and George, leaving four children, viz.: James B. Lane, Elliott E. Lane, Mary E. S. Lane and H. Lane, the last three of whom are minors, having the said Rev. Edward Y. Buchanan for their guardian.

It is agreed that the amount of rents and interest received by C. Gillespie and James Dickey, trustees as aforesaid, on the 5th August 1840, was the sum of $1467.39, when Elizabeth S. Huston arrived at the age of 21 years; and that the *amount total of* principal and interest, in the hands of James Dickey, acting trustee, is $4100.70, with interest from 5th October 1840 till 1st April 1844, (when the moneys were in the hands of said trustee for distribution), allowing said trustee the sum of $150, to be credited out of the same for allowance and expenses.

If the court should be of opinion that Elizabeth Speer Huston was entitled to rents and interest accrued and received by the said trustee up to 5th August 1840, when the said Elizabeth arrived at the age of 21, then judgment is to be entered for the plaintiffs for the same, amounting to the sum of $1467.39, with interest from 5th August 1840 till 1st April 1844, making the sum of $1789.55.

But if the court should be of opinion that the plaintiffs are entitled to the recovery of the total of principal and interest of said trust funds in the hands of the said trustee, then judgment to be

[Kelso v. Dickey.]

entered for the plaintiffs for the sum of $4100.70, with interest from the 5th October 1840 till 1st April 1844—less $150."

Will of Sarah B. Huston. — I will and bequeath to my beloved sister Harriet Buchanan, my large bed and bedstead, together with clothes and every other article necessary to furnish it completely. It is my will that my sister Harriet shall take my spoons, china, and all other articles of furniture which I may own, and preserve them for my daughter Elizabeth Speer Huston, to be given to her at her marriage, or on her attainment of the age of 21 years. In case my said daughter Elizabeth dies before marriage or the attainment of the age of 21 years, then every such article of furniture is to belong absolutely to my sister Harriet. All the money which may be due to me from the estate of my deceased husband, and from the guardian of my child for her keeping, I wish to be applied to the education and maintenance of my daughter, except so much of it as is necessary for the payment of my just debts; these I desire my executor, hereafter mentioned, to pay out of this fund. The undivided eighth part which I own in the real estate of my father, I devise to Charles Gillespie and James Dickey for and during the minority of my daughter Elizabeth Speer Huston, in trust and for the purpose that the said Charles Gillespie and James Dickey, or the survivor of them, shall receive the rents, issues and profits of said estate, to be paid by the aforesaid trustees, or the survivor of them, to my said daughter Elizabeth, on her attainment of the age of 21 years, or at the birth of lawful issue. I desire that none of the rents or issues of my said real estate shall be applied to the education or maintenance, or in any other manner for the use of my said daughter Elizabeth, until she attains the age of 21 years, or until the birth of lawful issue, unless her own estate is clearly shown to be insufficient to support her; in such case the profits are to be applied to her education and maintenance. In case my said daughter Elizabeth Speer Huston lives to the age of 21 years, then my aforesaid interest of an eighth part in the real estate of my father I devise to her and her children, if she shall have any living at the time of her death; but in case she dies before the age of 21 years, or without lawful issue alive at the time of her death, then and in such case it is my will that my said real estate shall remain to my sister Harriet Buchanan, and my brothers William Speer and George Washington Buchanan, their heirs and assigns, for ever, as tenants in common, to be equally divided between them; my said sister Harriet and brothers William and Washington paying rateably between them the sum of $200 to my sister Jane B. Lane, and a like sum to my brother Edward Y. Buchanan. This is to be understood as a devise in case of my daughter Elizabeth's death before the age of 21 years and without issue, of my real estate, together with its accumulated profits, to my sister Harriet and my brothers William and Washington. In case, how-

VII. — 36                  Y *

[Kelso v. Dickey.]

ever, it shall be thought expedient by the parties concerned, together with my aforesaid trustees, or the survivor of them, that my aforesaid interest in the real estate of my father shall be sold during the minority of my said daughter Elizabeth Speer Huston, then it is my will that it shall be sold, and that my aforesaid trustees, Charles Gillespie and James Dickey, or the survivor of them, shall receive the money arising from the sale of said estate and put it out to the best advantage.   It is also my will that none of the interest of said money, in case the estate is sold, shall be applied to my daughter Elizabeth's use till she attains the age of 21 years, unless her own estate is found insufficient to maintain and educate her.   That on her arrival at the age of 21 years, the interest of the amount for which said estate shall be sold, be paid to her by my aforesaid trustees, or the survivor of them; and in case she lives unmarried to the age of 25 years, then the whole amount, principal and interest, to be paid her, or the whole amount to be paid her on the birth of issue.   But in case she dies before the age of 25, or without issue born, then it is my will that the money arising from the sale of said estate, together with the interest which may be accumulated on it, shall be equally divided between my sister Harriet Buchanan and my brothers William Speer and George Washington Buchanan; they paying rateably between them the sum of $200 to my sister Jane B. Lane, and a like sum to my brother Edward Y. Buchanan.   In case of the death of both my aforesaid trustees, or a refusal to act by them both, then I desire that the Orphans' Court of the county of Franklin, on the application of my friends, shall appoint persons in their stead; and persons so appointed I hereby vest with all the powers above vested in Charles Gillespie and James Dickey.   I do hereby empower and appoint my brother-in-law, Elliott T. Lane, to act as executor of this my last will."

Will of Elizabeth S. Kelso. — "I will and direct that all the property of whatsoever kind, real, personal or mixed, which I now possess, or am in any manner entitled to, wherever situated, and all of any kind to which I may at any time hereafter be entitled, shall go to and be enjoyed by my beloved husband Charles W. Kelso, should he survive me, to be held, possessed and disposed of by him as fully and as entirely as I myself could in my lifetime."

The court below rendered a judgment for plaintiff for the sum of $1789.51, being the amount of interest and rents payable to said Elizabeth on the 5th of August 1840, when she arrived at the age of 21, with interest on the same till 1st April 1844.

*Thompson*, for plaintiff in error, argued that there was a general intent manifested by the will that the legatee was to take upon her marriage. That an estate may arise by an implication such as arises out of this will.   2 *Pr. Wms.* 69; 3 *Bro. Ch. Rep.* 236; 5

*Burr.* 2608; 2 *Madd. Rep.* 576. The limitation over is too remote, and therefore void; and if not, it lapsed by their death before that of the daughter. 9 *Watts* 407; 1 *Watts & Serg.* 205; 1 *Rop. Leg.* 401; 2 *Atk.* 616; 1 *Pr. Wms.* 563.

*Chambers,* for defendant in error, on the last point cited *Willis Rep.* 226; 1 *Ves.* 236. But if lapsed, it would go to the heirs at law and not to the plaintiff. 7 *Cranch* 476; *Wilson* 29.

The opinion of the Court was delivered by

SERGEANT, J.—1. In the events that have occurred, Elizabeth, the daughter of the testatrix, having arrived at the age of 21, was entitled to receive the interest on the amount of her share of the estate which was sold. As to the principal and the interest afterwards accruing upon it, the right depends on the construction to be given to the provisions of the will that follow. "And in case she lives unmarried to the age of 25 years, then the whole amount, principal and interest, to be paid to her; or, the whole amount to be paid to her on the birth of issue. But in case she dies before the age of 25, or without issue born, then to be divided" amongst the testatrix's sister and two brothers. She married and died without issue after the age of 21, but before arriving at 25, and now the legacy is claimed by her surviving husband, who contends, that by the general intent, and by necessary implication, she was entitled to the bequest in case she married before 25, though she had no issue. But this, we think, would be a strained implication, and would carry the bequest to the husband contrary to the intent of the testator, which would seem to have been that the daughter was to have it before arriving at 25, only in case she had issue born. The word unmarried seems to have been used to express the same meaning as without issue born; it being impossible she could have issue born, in legal contemplation, without being married. Nor is it easily to be believed that the mother designed that if her daughter married and died under 25, without having children, her husband should take the bequest in preference to her own sister and brothers.

2. We think there is no ground for holding that the limitation over to the sister and two brothers is too remote, and therefore void. In this, as in numerous cases that have occurred, the word *or,* in order to effectuate the intent of the testatrix, may be read *and,* and then the contingency must happen within a life or lives in being and 21 years afterwards, and is therefore good by way of executory devise. Besides, even taking the words as they stand, the contingency is not if she die without issue, which is indefinite, but if she die without issue *born;* by which, immediately on the birth of issue, the bequest became absolute in the daughter.

3. It is contended that the bequest over lapsed by the death of the brother and sisters of the testatrix, before the decease of Mrs

Kelso; and the argument is that the first bequest of Mrs Kelso is contingent, and the bequest over after it is also contingent; and that in such case no contingent legatee can transmit his interest to his representatives. It is, however, certain, that one or the other class of the legatees must take; the events contemplated must certainly happen, one way or the other. Mrs Kelso would either live to 25, or die before that time, having had issue born or not; so that the bequest was *quodam modo* vested in some of them. The contingency on which the legatees over were to take was not a contingency annexed to their capacity to take; such, for example, as their living to a certain time; but an event independent of them, and not affecting their capacity to take or transmit the right to their representatives; and such a contingent interest has frequently been decided to be vested so as to be transmissible to representatives. Hence the rule which applies is that laid down in 1 *Roper on Legacies* 401, where it is said to be a rule of construction in regard to contingent executory bequests, that the interests of the first and subsequent takers *quodam modo* vest *uno instanti;* so that if the substituted legatee die before the contingency happens upon which he is to succeed to the legacy, his representative will notwithstanding be entitled to it so soon as the event shall take place. Suppose then a bequest be made to A., but if A. died under 21, or without leaving children or issue, to B.; although B. happened to die before A., B.'s personal representative would be entitled to receive the legacy upon the happening of the contingency, on the ground of its being vested in right in B. previously to his decease, and several cases are cited. This seems to be the point before us.

Judgment affirmed.